UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

(FILED ELECTRONICALLY)

CIVIL ACTION NO. __5:18-cv-60-TBR_____

UNITED STATES OF AMERICA                                    PLAINTIFF

vs.

JIMMY DALE GEURIN, JR.                                      DEFENDANT
2249 Irvin Cobb Road
Murray, KY 42071

ANY UNKNOWN SPOUSE OF
JIMMY DALE GEURIN, JR.
Serve:  Warning Order Attorney

**COMPLAINT FOR FORECLOSURE**

        Plaintiff, the United States of America, states as follows:

        1.      This is a mortgage foreclosure action brought by the United
States of America on behalf of its agency, the United States Department of
Agriculture, Farm Service Agency ("FSA").

        2.      Jurisdiction arises under 28 U.S.C. § 1345.  Venue is proper in
this judicial division, where the subject property is located.

        3.      Defendant Jimmy Dale Geurin, Jr. (the "Borrower") executed and
delivered to FSA, for valuable consideration, the following promissory notes:

| Loan No. | Amount of Note | Annual Interest | Date of Note | Exhibit |
|----------|----------------|-----------------|--------------|---------|
| 01 | $ 46,190.00 | 2.875% | 01/22/2010 | A |
| 02 | $196,680.00 | 4.125% | 12/28/2010 | B |
| 03 | $  6,690.00 | 1.750% | 12/28/2010 | C |
| 04 | $ 47,480.00 | 1.750% | 12/28/2010 | D |
| 05 | $ 10,000.00 | 1.750% | 12/28/2010 | E |

Copies of these promissory notes are attached as **Exhibits A, B, C, D,** and **E**,
and are incorporated by reference as though set forth fully herein.

4.     Promissory Notes 02, 03, 04, and 05 are secured by a mortgage executed by the Borrower in favor of FSA and recorded in the Office of Calloway County on January 26, 2011, in Book 864, Page 345.  Through the Mortgage, the Borrower, a single man, granted FSA a first mortgage lien against tracts of real property described in more detail in Exhibit A to the mortgage.  A copy of the Mortgage is attached as **Exhibit F** to this Complaint and incorporated by reference as if set forth fully herein.

5.     To secure repayment of promissory note 01 described in paragraph 3 of this Complaint, on January 22, 2010, the Borrower executed and delivered to FSA a security agreement granting FSA security interests in Borrower's crops, farm and other equipment, livestock and federal subsidy entitlements as described in more detail in security agreement ("Collateral").  A copy of the Security Agreement between the Borrower and FSA is attached as **Exhibit G** and are incorporated by reference as if set forth fully herein.

6.     To further secure repayment of promissory notes 02, 03, 04 and 05 described in paragraph 3 of this Complaint, on December 28, 2010, the Borrower executed and delivered to FSA a security agreement granting FSA security interests in Borrower's crops, farm and other equipment, fixtures, livestock and federal subsidy entitlements described in more detail in the security agreements ("Collateral").  A copy of this Security Agreement between the Borrower and FSA is attached as **Exhibit H** and incorporated by reference as if set forth fully herein.

7.     To further secure repayment of promissory note 02 described in paragraph 3 of this Complaint, the Borrower executed and delivered to FSA a security agreement granting FSA security interests in all Borrower's livestock, farm and other equipment, and fixtures, all described in more detail in the security agreement ("Collateral").  A copy of the Security Agreement between the Borrower and FSA is attached as **Exhibit I** and incorporated by reference as if set forth fully herein.

8.    To perfect its security interest in the Collateral described in the security agreements with the Borrower, FSA filed UCC Financing Statements with the Kentucky Secretary of State as follows:

| Document Number | Filing Date | Exhibit |
|---|---|---|
| 2010-2430760-55 | 01/08/2010 | J |
| 2010-2492995-83 | 12/22/2010 | K |

Subsequent to filing these UCC Financing Statements, FSA filed continuation statements for each Financing Statement with the Kentucky Secretary of State.

9.    Pursuant to the terms of the security agreements, if Borrower defaults on the underlying promissory notes, then FSA, at its option, may take possession of the collateral and exercise any sale or other rights afforded to FSA.  The security agreements also permit the United States to recover all costs associated with the preservation and protection of the Collateral and to deduct all costs incurred during the collection and disposition of the Collateral from the sale proceeds.

10.    The Borrower has defaulted under the terms of the promissory notes, mortgage and security agreements by failing to make payments when due.

11.    FSA has, in accordance with the loan documents, accelerated the loan and declared the entire principal balance, together with all accrued and unpaid interest and all other sums due under the loan documents, to be due and payable.  Further, FSA sent notice to the Borrower of the default and acceleration of the loan.

12.    There remains due and payable on the Borrower's loans as follows:

| Loan No. | Principal Balance | Interest as of 7/11/17 | Daily Accrual Rate |
|---|---|---|---|
| 44-01 | $ 33,911.04 | $ 4,417.56 | $ 2.6711 |
| 44-02 | $196,680.00 | $56,754.45 | $22.2275 |
| 44-03 | $  6,690.00 | $   830.43 | $ 0.3208 |
| 44-04 | $ 47,480.00 | $ 5,627.39 | $ 2.2764 |
| 44-05 | $  8,439.22 | $   763.52 | $ 0.4046 |
| 44-99 | $      5.00 | $     .36 | $ 0.0004 |
| TOTAL | $293,205.26 | $68,393.71 | $27.9008 |

13.    The total amount owed by the Borrower on all promissory notes as of February 6, 2018 is $293,205.26 in principal, plus interest of $68,393.71, for a total amount of $361,598.97.  Interest continues to accrue on the notes at the daily accrual rates set forth in Paragraph 3 of the Complaint above.

14.    Pursuant to Section 7 of said mortgage, the United States is entitled to reimbursement from the mortgagor for advances made to preserve the subject property and for the expenses of this action.

15.    Due to the Borrower's default on the loan documents, the United States is entitled to foreclosure on the subject real property to satisfy any judgment in favor of the United States.  In addition, the United States is entitled to possession of the collateral provided for in the security agreements, which Collateral is, on information and belief, in the Borrower's possession.  The United States is also entitled to dispose of the Collateral to satisfy any judgment in favor of the United States.

16.    The United States also seeks a personal judgment against the Borrower for the amount owed, plus interests and costs as allowed by law.

17.    Whether or not Defendant Jimmy Dale Geurin, Jr. is married is unknown to the Plaintiff.  To the extent that Defendant Jimmy Dale Geurin, Jr. is married, the Defendant Any Unknown Spouse of Jimmy Dale Geurin, Jr. may be vested with a spousal interest in the Property.  Said spousal interest, if any, is junior in rank and subordinate in priority to the first mortgage lien on the Property in favor of RHS.  RHS is entitled to a foreclosure sale of the Property free and clear of any interest therein or claim thereon in favor of the defendant, Unknown Spouse, and the Plaintiff calls upon this Spouse to come forth and assert her claim or her interest in the Property or be forever barred.

18.    There are no other persons or entities purporting to have an interest in the Property known to the Plaintiff.

4

WHEREFORE, Plaintiff, the United States of America, on behalf of RHS, demands:

a.    Judgment against the interests of the Borrower in the Property in the principal amount of $293,205.26, plus $68,393.71 interest as of February 6, 2018, for a total unpaid balance due of $361,598.87 as of February 6, 2018, with interest accruing at the daily rate of $27.9008 from February 6, 2018, until the date of entry of judgment, and interest thereafter according to law, plus any additional costs, disbursements and expenses advanced by the United States;

b.    That the United States be adjudged a lien on the Property, prior and superior to any and all other liens, claims, interests and demands, except liens for unpaid real estate ad valorem taxes;

c.    That the United States' liens be enforced and the Property be sold in accordance with Title 28 U.S.C. §§ 2001-2003 subject to easements, restrictions and stipulations of record, but free and clear of all other liens and encumbrances except liens for any unpaid ad valorem real property taxes;

d.    That the proceeds from the sale be applied first to the costs of this action, second to any ad valorem real property taxes, if any, third to the satisfaction of the debt, interest, costs and fees due the United States, with the balance remaining to be distributed to the parties as their liens or interests may appear;

e.    For judgment allowing the United States to take possession of all Collateral and sell, lease or otherwise dispose of the collateral at public or private sale, with or without advertisement;

f.    That the Property be adjudged indivisible and be sold as a whole;

g.    For personal judgment against the Borrower for the amount owed, plus interests and costs; and

h.    That the United States receive any and all other lawful relief to which it may be entitled.

UNITED STATES OF AMERICA

RUSSELL M. COLEMAN
United States Attorney


s/ William F. Campbell
William F. Campbell
Assistant U.S. Attorney
717 West Broadway
Louisville, KY  40202
Phone:  502/582-5911
Fax:    502/625-7110
bill.campbell@usdoj.gov

This form is available electronically.

Form Approved - OMB No. 0560-0237
(See Page 4 for Privacy Act and Public Burden Statements.)

| **FSA-2026**<br>(12-31-07) | **U.S. DEPARTMENT OF AGRICULTURE**<br>Farm Service Agency | Position 2 |
| --- | --- | --- |

## PROMISSORY NOTE

| 1. Name<br>GEURIN JR, JIMMY DALE | 2. State<br>KENTUCKY | 3. County<br>CALLOWAY |
| --- | --- | --- |

| 4. Case Number | 5. Fund Code<br>44 | 6. Loan Number<br>01 | 7. Date<br>01/22/2010 |
| --- | --- | --- | --- |

| 8. TYPE OF ASSISTANCE<br>OL BF 7 YEAR | 9. ACTION REQUIRING PROMISSORY NOTE |
| --- | --- |

9. ACTION REQUIRING PROMISSORY NOTE

- [x] Initial loan
- [ ] Subsequent loan
- [ ] Consolidation
- [ ] Conservation easement
- [ ] Rescheduling
- [ ] Reamortization
- [ ] Deferred payments
- [ ] Debt write down

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America Department of Agriculture, acting through the Farm Service Agency (Government), or its assigns, at its office in *(a)* MAYFIELD KY _____ or at such other place as the Government may later designate in writing, the principal sum of *(b)* FORTY SIX THOUSAND, ONE HUNDRED NINETY AND NO/100---------- ---------------------------------------------- dollars *(c)* (S 46,190.00--------------- , plus interest on the unpaid principal balance at the **RATE** of *(d)* TWO AND SEVEN EIGHTHS------------------------------------ percent *(e)* 02.875 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* SEVEN (7) installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
| --- | --- | --- | --- |
| S 7,380.00 | 01/01/2011 | S N/A | |
| S N/A | | S N/A | |
| S N/A | | S N/A | |
| S N/A | | S N/A | |

and *(d)* S 7,380.00 _____ thereafter on the *(e)* JANUARY FIRST of each *(f)* YEAR _____ until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* SEVEN (7) _____ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed. Borrower authorizes FSA to enter the amounts and dates of such advances in the Record of Advances.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382 (TDD). USDA is an equal opportunity provider and employer.

Initial _____ Date 1-22-10

EXHIBIT
A

FSA-2026 (12-31-07)

13.  Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14.  Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15.  Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower.  Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16.  Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17.  If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a)<br>FUND CODE<br>LOAN NO. | (b)<br>FACE AMOUNT | (c)<br>INTEREST<br>RATE | (d)<br>DATE<br>(include year) | (e)<br>ORIGINAL BORROWER | (f)<br>LAST INSTALL. DUE<br>(include year) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18.  Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19.  If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan.

Initial    Date 1-22-10

FSA-2026 (12-31-07)                                                                                      Page 3 of 4

20.  The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21.  Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute **DEFAULT** under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22.  This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8.  This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23.  Presentment, protest, and notice are waived.

_Jimmy E Geurin Jr._                          1-22-10
JIMMY D. GEURIN JR
229 GEURIN RD
MURRAY KY 42071

1-22-10

FSA-2026 (12-31-07)

## 24. RECORD OF ADVANCES

| A. AMOUNT | B. DATE | A. AMOUNT | B DATE | A. AMOUNT | B. DATE |
|---|---|---|---|---|---|
| (1) $ 24,290 00 | 1-26-10 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | C. TOTAL: | $ | |

NOTE: The following statements are made in accordance with the Privacy Act of 1974 (5 USC 552a): the Farm Service Agency (FSA) is authorized by the Consolidated Farm and Rural Development Act, as amended (7 USC 1921 et seq.), or other Acts, and the regulations promulgated thereunder, to solicit the information requested on its application forms. The information requested is necessary for FSA to determine eligibility for credit or other financial assistance, service your loan, and conduct statistical analyses. Supplied information may be furnished to other Department of Agriculture agencies, the Internal Revenue Service. The Department of Justice or other law enforcement agencies, the Department of Defense, the Department of Housing and Urban Development, the Department of Labor, the United States Postal Service, or other Federal, State, or local agencies as required or permitted by law. In addition, information may be referred to interested parties under the Freedom of Information Act (FOIA), to financial consultants, advisors, lending institutions, packagers, agents, and private or commercial credit sources, to collection or servicing contractors, to credit reporting agencies, to private attorneys under contract with FSA or the Department of Justice, to business firms in the trade area that buy chattel or crops or sell them for commission, to Members of Congress or Congressional staff members, or to courts or adjudicative bodies. Disclosure of the information requested is voluntary. However, failure to disclose certain items of information requested, including your Social Security Number or Federal Tax identification Number, may result in a delay in the processing of an application or its rejection.

According to the Paperwork Reduction to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

Initial _____   Date 1-22-10

This form is available electronically.

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Public Burden Statements.)

**FSA-2026**
(09-07-10)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

Position 2

## PROMISSORY NOTE

| 1. Name JIMMY DALE GEURIN, JR. | 2. State KENTUCKY | 3. County CALLOWAY |
|---|---|---|
| 4. Case Number ███████ | 5. Fund Code 41 | 6. Loan Number 02 | 7. Date DECEMBER 28, 2011 |

| 8. TYPE OF ASSISTANCE 203-FO-BF-REG | 9. ACTION REQUIRING PROMISSORY NOTE: |

9. ACTION REQUIRING PROMISSORY NOTE:

- [x] Initial loan
- [ ] Consolidation
- [ ] Subsequent loan
- [ ] Conservation easement
- [ ] Rescheduling
- [ ] Reamortization
- [ ] Deferred payments
- [ ] Debt write down

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America Department of Agriculture, acting through the Farm Service Agency (Government), or its assigns. at its office in *(a)* HOPKINSVILLE, KENTUCKY or at such other place as the Government may later designate in writing, the principal sum of *(b)* ONE HUNDRED NINETY-SIX THOUSAND SIX HUNDRED EIGHTY AND NO/100 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - dollars *(c)* ($ 196,680.00 ), plus interest on the unpaid principal balance at the **RATE** of *(d)* FOUR AND ONE-EIGHTH percent *(e)* ( 4.125 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations. by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* 40 installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 10,124.00 | 04/01/2012 | $ NA | |
| $ NA | | $ NA | |
| $ NA | | $ NA | |
| $ NA | | $ NA | |

and *(d)* $ 10,124.00 thereafter on the *(e)* 1ST OF APRIL of each *(f)* YEAR until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* FORTY years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing. the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Initial ___   Date 12-28-10

EXHIBIT
B

FSA-2026 (09-07-10)                                                                                           Page 2 of 3

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _____   Date 12-28-10

FSA-2026 (09-07-10)

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

JIMMY DALE GEURIN, JR                    (Borrower)
229 Geurin Road
Murray, KY 42071

NOTE: The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

This form is available electronically

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Public Burden Statements )

**FSA-2026**
(09-07-10)

**U.S. DEPARTMENT OF AGRICULTURE**
Farm Service Agency

Position 2

## PROMISSORY NOTE

| 1. Name<br>JIMMY DALE GEURIN, JR. | 2 State<br>KENTUCKY | 3. County<br>CALLOWAY |
|---|---|---|

| 4. Case Number<br>██████████ | 5 Fund Code<br>44 | 6. Loan Number<br>03 | 7 Date<br>DECEMBER 28, 2010 |
|---|---|---|---|

| 8. TYPE OF ASSISTANCE<br>211-OL-BF-REG-7YR |
|---|

**9. ACTION REQUIRING PROMISSORY NOTE.**

- [ ] Initial loan
- [ ] Consolidation
- [x] Subsequent loan
- [ ] Conservation easement
- [ ] Rescheduling
- [ ] Reamortization
- [ ] Deferred payments
- [ ] Debt write down

10.  FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America Department of Agriculture, acting through the Farm Service Agency (Government), or its assigns, at its office in *(a)*  HOPKINSVILLE, KENTUCKY  or at such other place as the Government may later designate in writing, the principal sum of *(b)*  SIX THOUSAND SIX HUNDRED NINTY AND NO/100- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - dollars *(c)* ($ 6,690.00 , plus interest on the unpaid principal balance at the RATE of *(d)* ONE AND THREE-FOURTHS percent *(e)* 1.750 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations. by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11.  Principal and interest shall be paid in *(a)*  7  installments as indicated  below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 1,024.00 | 04/01/2012 | $ NA | |
| $ NA | | $ NA | |
| $ NA | | $ NA | |
| $ NA | | $ NA | |

and *(d)* $  1,024.00  thereafter on the *(e)* 1ST OF APRIL  of each *(f)* YEAR  until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby. if not sooner paid, shall be due and payable *(g)*  SEVEN  years from the date of this note, and except that prepayments may be made as provided below.  The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12.  If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government.  Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government.  Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.)  Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc), should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay).  USDA is an equal opportunity provider and employer.

Initial  [signature]  Date  12-28-10

EXHIBIT
C

FSA-2026 (09-07-10)                                                                                          Page 2 of 3

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a)<br>FUND CODE/<br>LOAN NO. | (b)<br>FACE AMOUNT | (c)<br>INTEREST RATE | (d)<br>DATE<br>(MM-DD-YYYY) | (e)<br>ORIGINAL BORROWER | (f)<br>LAST INSTALL<br>DUE<br>(MM-DD-YYYY) |
|---|---|---|---|---|---|
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _____   Date _____

20.  The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21.  Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22.  This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8.  This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23.  Presentment, protest, and notice are waived.


JIMMY DALE GEURIN, JR                (Borrower)
229 Geurin Road
Murray, KY 42071

NOTE:    The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended).  The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.).  The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees.  The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower.  Providing the requested information is voluntary.  However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees.  The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0237.  The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

This form is available electronically.

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Public Burden Statements.)

**FSA-2026**
(09-07-10)

**U.S. DEPARTMENT OF AGRICULTURE**
Farm Service Agency

Position 2

## PROMISSORY NOTE

| 1. Name JIMMY DALE GEURIN, JR. | 2. State KENTUCKY | 3. County CALLOWAY |
|---|---|---|

| 4. Case Number [redacted] | 5. Fund Code 44 | 6. Loan Number 04 | 7. Date DECEMBER 28, 2010 |
|---|---|---|---|

| 8. TYPE OF ASSISTANCE 211-OL-BF-REG-7YR | 9. ACTION REQUIRING PROMISSORY NOTE. |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE.

- [ ] Initial loan
- [ ] Conservation easement
- [ ] Deferred payments
- [ ] Consolidation
- [ ] Rescheduling
- [ ] Debt write down
- [x] Subsequent loan
- [ ] Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America Department of Agriculture, acting through the Farm Service Agency (Government), or its assigns, at its office in *(a)* HOPKINSVILLE, KENTUCKY or at such other place as the Government may later designate in writing, the principal sum of *(b)* FORTY-SEVEN THOUSAND FOUR HUNDRED EIGHTY AND NO/100------------ ------------------------------- dollars *(c)* ($ 47,480.00 , plus interest on the unpaid principal balance at the RATE of *(d)* ONE AND THREE-FOURTHS percent *(e)* 1.750 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* 7 installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 7,267.00 | 04/01/2012 | $ NA | |
| $ NA | | $ NA | |
| $ NA | | $ NA | |
| $ NA | | $ NA | |

and *(d)* $ 7,267.00 thereafter on the *(e)* 1ST OF APRIL of each *(f)* YEAR until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* SEVEN years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 377-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Initial _____ Date 12-28-10

**EXHIBIT D**

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _____   Date 12-23-10

FSA-2026 (09-07-10)                                                                                                         Page 3 of 3

20.  The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21.  Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22.  This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8.  This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23.  Presentment, protest, and notice are waived.


JIMMY DALE GEURIN, JR          (Borrower)
229 Geurin Road
Murray, KY 42071

NOTE:     The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended).  The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.).  The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees.  The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower.  Providing the requested information is voluntary.  However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees.  The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

          According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0237.  The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

This form is available electronically

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Public Burden Statements.)

**FSA-2026**
(09-07-10)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

Position 2

## PROMISSORY NOTE

| 1. Name JIMMY DALE GEURIN, JR. | 2. State KENTUCKY | 3. County CALLOWAY |
|---|---|---|

| 4. Case Number | 5. Fund Code 44 | 6. Loan Number 05 | 7. Date DECEMBER 28, 2010 |
|---|---|---|---|

| 8. TYPE OF ASSISTANCE 209-OL-BF-REG-1YR |
|---|

**9. ACTION REQUIRING PROMISSORY NOTE:**

| ☐ Initial loan | ☐ Conservation easement | ☐ Deferred payments |
|---|---|---|
| ☐ Consolidation | ☐ Rescheduling | ☐ Debt write down |
| ☒ Subsequent loan | ☐ Reamortization | |

10.  FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America Department of Agriculture, acting through the Farm Service Agency (Government), or its assigns, at its office in *(a)*   HOPKINSVILLE, KENTUCKY                            or at such other place as the Government may later designate in writing, the principal sum of *(b)*   TEN THOUSAND AND NO/100- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - dollars *(c)* ($  10,000.0                            ), plus interest on the unpaid principal balance at the **RATE** of *(d)*  ONE AND THREE-FOURTHS                         percent *(e)*  1.750       %) per annum.  If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address.  The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11.  Principal and interest shall be paid in *(a)*   1       installments as indicated  below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 10,220.00 | 04/01/2012 | $ NA | |
| $ NA | | $ NA | |
| $ NA | | $ NA | |
| $ NA | | $ NA | |

and *(d)* $  NA                thereafter on the *(e)*  NA              of each *(f)* NA            until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*   TWO                  years from the date of this note, and except that prepayments may be made as provided below.  The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12.  If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government.  Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government.  Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Initial _____   Date _12-28-10_

EXHIBIT

E

FSA-2026 (09-07-10)                                                                                      Page 2 of 3

13.  Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14.  Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15.  Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower.  Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16.  Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17.  If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a)<br>FUND CODE/<br>LOAN NO. | (b)<br>FACE AMOUNT | (c)<br>INTEREST RATE | (d)<br>DATE<br>(MM-DD-YYYY) | (e)<br>ORIGINAL BORROWER | (f)<br>LAST INSTALL.<br>DUE<br>(MM-DD-YYYY) |
|---|---|---|---|---|---|
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

18.  Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19.  If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _____   Date 12-28-10

FSA-2026 (09-07-10)                                                                                          Page 3 of 3

20.  The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21.  Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22.  This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8.  This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23.  Presentment, protest, and notice are waived.


/S/Jimmy Dale Geurin, Jr.
_____
JIMMY DALE GEURIN, JR         (Borrower)

229 Geurin Road
Murray, KY 42071


NOTE:   The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended).  The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.).  The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower.  Providing the requested information is voluntary.  However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees.  The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

          According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0237.  The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

DATE __1-26-11__
TIME __12:13 PM__
BK __864__ PG __345__

DLS  000045

RAY G. COURSEY JR. CLERK
CALLOWAY CO.

Form. Approved-OMB No. 0560-0237
(See Page 4 for Privacy Act and Public Burden Statements)

Position 5

**FSA-2029 KY**
(08-26-08)

**UNITED STATES DEPARTMENT OF AGRICULTURE**
Farm Service Agency

## MORTGAGE FOR KENTUCKY

THIS MORTGAGE ("instrument") is made on __DECEMBER 28__, 20 __10__. The mortgagor is __JIMMY DALE GEURIN, JR., a single man__

("Borrower") whose mailing address is __229 GEURIN RD, MURRAY, KY 42071__. This instrument is given to the United States of America acting through the Farm Service Agency, United States Department of Agriculture ("Government") located at __3237 EAGLE WAY BYPASS HOPKINSVILLE, KY 42240__

This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreements (collectively called "note"), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the Government, and authorize acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| DECEMBER 28, 2010 | $196,680.00 | 4.125% | DECEMBER 28, 2050 |
| DECEMBER 28, 2010 | $6,690.00 | 1.750% | DECEMBER 28, 2017 |
| DECEMBER 28, 2010 | $47,480.00 | 1.750% | DECEMBER 28, 2017 |
| DECEMBER 28, 2010 | $10,000.00 | 1.750% | DECEMBER 28, 2012 |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as provided in Government regulations and the note).

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the above note.

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof; (2) recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S.C. § 2001 (3) payment of all advances and expenditures, with interest, made by the Government; and (4) the obligations and covenants of Borrower set forth in this instrument, the note, and any other loan agreements.

In consideration of any loan made by the Government under the Consolidated Farm and Rural Development Act 7 U.S.C. § 1921 et seq. as evidenced by the note, Borrower irrevocably mortgages, grants and conveys to Government the following described property situated in the State of Kentucky, County or Counties of __CALLOWAY__

**See attached Exhibit A for legal description.**

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at 202-720-2600 (voice and TDD). To file a complaint of discrimination write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue S.W., Washington, DC 20250-9410 or call 800-795-3272 (voice) or 202-720-6382 (TDD). USDA is an equal opportunity provider and employer.



together with all rights, including the rights to mining products, gravel, oil, gas, coal or other minerals, moneys, rights, interests, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereto, all revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein, collectively called the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions that are now or hereafter included in, affixed, or attached to "the property."

Borrower COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

1. **Payment.** Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.
2. **Fees.** Borrower shall pay to the Government such fees and other charges that may now or later be required by Government regulations.
3. **Application of payments.** Unless applicable law or Government's regulations provide otherwise all payments received by the Government shall be applied in the following order of priority: (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.
4. **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.
5. **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in: (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss, or damage that the Government may incur as a consequence of this assignment.

6. **Insurance.** Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. § 4001 et seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.
7. **Advances by Government.** The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note which has the highest interest rate. All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government in any order the Government determines.

Initial _____   date 12-18-10   FSA-2029 KY (08-26-08) Page 2 of 6

000047

8. **Protection of lien.** Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the note. Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

9. **Authorized purposes.** Borrower shall use the loan evidenced by the note solely for purposes authorized by the Government.

10. **Repair and operation of property.** Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government; and (d) operate the property in a good and husbandlike manner. Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11. **Legal compliance.** Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12. **Transfer or encumbrance of property.** Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13. **Inspection.** At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14. **Hazardous substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not: do, nor allow anyone else to do, anything affecting the property that is in violation of any federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances deemed as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15. **Adjustment; release; waiver; forbearance.** In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

16. **Graduation.** If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17. **Forfeiture.** Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18. **False statement.** Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19. **Cross Collateralization.** Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20. Highly erodible land; wetlands. Any loan secured by this instrument will be in default if Borrower uses land or loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land, or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21. Non-discrimination. If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22. Notices. Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23. Governing law; severability. This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24. Successors and assigns; joint and several covenants. The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the Note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower's interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25. No merger. If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

26. Time is of the essence. Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.


NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

27. Default; death; incompetence; bankruptcy. Should default occur in the performance or discharge of any obligation in this instrument or secured by this instrument or should the Borrower die or be declared incompetent, or should the Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any debt to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of, and take possession of, or operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument and sell the property as prescribed by law; and (e) enforce any and all other rights and remedies provided herein or by present or future law.

28. State law. Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

29. Assignment of leases and rents. Borrower agrees that the assignment of leases and rents in this instrument is immediately effective on the recording of this instrument. Upon default, the Borrower will receive any rents in trust for the Government and Borrower will not commingle the rents with any other funds. Any amounts collected shall be applied at the

Initial _____   date 12-28-10        FSA-2029 KY (08-26-08) Page 4 of 6

00849

Government's discretion first to costs of managing, protecting and preserving the property, and to any other necessary related expenses. Any remaining amounts shall be applied to reduce the debt evidenced by the note. Borrower agrees that the Government may demand that Borrower and Borrower's tenants pay all rents due or to become due directly to the Government if the Borrower defaults and the Government notifies Borrower of the default. Upon such notice, Borrower will endorse and deliver to the Government any payments of rents. If the Borrower becomes subject to a bankruptcy, then Borrower agrees that the Government is entitled to receive relief from the automatic stay in bankruptcy for the purpose of enforcing this assignment.

30. **Satisfaction of mortgage.** Upon satisfaction/termination of this mortgage, the Government at the Borrower's expense and only upon receipt of the appropriate filing fee, shall execute and file of record such instrument of release, satisfaction and termination in proper form pursuant to the requirements contained in K.R.S. 382.365.

31. **Application of foreclosure proceeds.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government, and (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government in the order prescribed above.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

_____ (SEAL)        _____ (SEAL)
JIMMY DALE GEURIN, JR.

_____ (SEAL)        _____ (SEAL)


ACKNOWLEDGMENTS

STATE OF KENTUCKY
COUNTY OF _Cullowy_          } ss.        (Individual)

On this _28th_ day of _December_ , before me personally appeared _Jimmy Dale Geurin, Jr._
with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), whose name is subscribed to the foregoing instrument, and acknowledged that (he, she, or they) signed and delivered the instruments as (his, her or their) free and voluntary act, for the uses and purposes set forth.

My commission expires: _1/16/1_

_____
NOTARY PUBLIC

_____
Notary ID No.:

NOTE:   The following statements are made in accordance with the Privacy Act of 1974 (5 USC 552a); the Farm Service Agency (FSA) is authorized by the Consolidated Farm and Rural Development Act: (7 USC 1921 et seq.), and the regulations promulgated thereunder, to solicit the information requested on this form. The information requested is necessary for FSA to determine eligibility for financial assistance, service your loan, and conduct statistical analyses. Supplied information may be furnished to other Department of Agriculture agencies, the Department of the Treasury, the Department of Justice or other law enforcement agencies, the Department of Defense, the Department of Housing and Urban Development, the Department of Labor, the United States Postal Service, or other Federal, State, or local agencies as required or permitted by law. In addition, information may be referred to interested parties under the Freedom of Information Act; to financial consultants, advisors, lending institutions, packagers, agents, and private or commercial credit sources; to collection or servicing contractors; to credit reporting agencies; to private attorneys under contract with FSA or the Department of Justice; to business firms in the trade area that buy chattel or crops or sell them for commission; to Members of Congress or Congressional staff members; or to courts or adjudicative bodies. Disclosure of the information requested is voluntary. However, failure to disclose certain items of information requested, including Social Security number or Federal Tax Identification Number, may result in a delay in the processing of this request or its rejection.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

PREPARERS STATEMENT

The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was prepared by

_Jason Gitwell_____
Name
300 Main St
Murray, KY 42071
_____    (address)

_____
                                              (Signature)

### RECORDER'S SIGNATURE

STATE OF KENTUCKY
COUNTY OF _Calloway_____   } ss.

I, _Ray G. Coursey Jr._____ , Clerk of the County Court for the County aforesaid, do certify that the foregoing mortgage was on the _26_ day of _Jan_____ , 20 _11_ , lodged for record at _12:13_ o'clock _p_ m., whereupon the same, with the foregoing and this certificate, have been duly recorded in my office.

Given under my hand this _26_ day of _Jan_____ , 20 _11_ .

_Ray G. Coursey Jr._____

Clerk of _Calloway_____ County Court

By _Rita Kelso_____ , D.C.

# EXHIBIT A

00051

Tract 1 – 733 Highland Road
Legal description of a tract of land located at 733 Highland Road, in the County of Calloway, State of Kentucky, being a part of the Southeast Quarter of Section 19, Township 3, Range 6 East, and a part of PVA parcel 084-0-0028-C, being a part of Tract 3 of a Minor Subdivision Plat of record in Plat Book 33, Page 29, Slide 3145, and also being Tract 3-B of a Minor Subdivision Plat of record in Plat Book 45, Page 73, Slide 438 and being further described as follows.

Beginning at a #4 rebar w/cap #3175 found at the southwest corner of the herein described tract and the northwest corner of Tract 3-A, said point being located approximately 0.45 miles northeast of the intersection of Liberty Road (Ky. Hwy. 1346) and 15.00 feet east of the centerline of Highland Road;

THENCE along the east line of Highland Road, North 02 degrees 12 minutes 13 seconds East for a distance of 165.63 feet to a #4 rebar w/cap #3175 found at the northwest corner of the herein described tract and the southwest corner of the Billy J. Balentine property (Deed Book 224 Page 182, Tract 4, Plat Book 33, Page 29, Slide 3145);
THENCE along the south line of the Balentine property, North 89 degrees 22 minutes 42 seconds East for a distance of 2558.13 feet to a #4 rebar w/cap #3175 found at the northeast corner of the herein described tract and on the west line of the Darlene and Lorenzo Watson property (Deed Book 753 Page 693);
THENCE along the west line of the Watson property, South 00 degrees 45 minutes 53 seconds West for a distance of 306.68 feet to a #4 rebar w/cap #3175 found at the southeast corner of the herein described tract and the northeast corner of the Wade Schroader property (Deed Book 708 Page 507, Tract 2, Plat Book 33, Page 29, Slide 3145);
THENCE along the north line of the Schroader property, South 89 degrees 23 minutes 49 seconds West for a distance of 2100.30 feet to a #4 rebar w/cap #3175 set at the southeast corner of Tract 3-A;
THENCE along the east line of Tract 3-A, North 02 degrees 12 minutes 13 seconds East for a distance of 140.50 feet to a #4 rebar w/cap #3175 set;
THENCE along the north line of Tract 3-A, South 89 degrees 23 minutes 49 seconds West for a distance of 465.50 feet to the point of beginning.

Together with and subject to covenants, easements, and restrictions of record.

This tract contains 16.508 acres according to a survey by VL Associates on August 17, 2010.

Being the same property conveyed from Robert Brown, Shirley Jones, Billie Reed and Mildred Loe, to Jimmy D. Geurin, Jr. by deed dated December 28, 2010 and recorded December 26, 2010, of record in Deed Book 864, Page 376 in the Calloway County Court Clerk's Office.


Tract 2
Legal description of 2 tracts of land located on Highland Road, in the County of Calloway, State of Kentucky, being a part of the Southeast Quarter of Section 19, Township 3, Range 6 East, and being PVA parcels 084-0-0028 and 084-0-0028-D, being Tracts 4 and 5 of a Minor Subdivision Plat of record in Plat Book 23, Page 72, Slide 2185 and Plat Book 33, Page 29, Slide 3145, and being further described as follows.

Beginning at a point at the southwest corner of the herein described tract and the northwest corner of Tract 3, said point being located approximately 0.48 miles northeast of the

intersection of Liberty Road (Ky. Hwy. 1346) and 8.41 feet east of the centerline of Highland Road and 6.59 feet west of a #4 rebar w/cap #3175 found;

    THENCE along the east side of Highland Road and crossing said road, North 02 degrees 12 minutes 33 seconds East for a distance of 612.24 feet to a 36 inch white oak tree at the northwest corner of the herein described tract and on the south line of the Joseph Trygier property (Deed Book 285 Page 455);

    THENCE along the south line of the Trygier property and crossing Highland Road and continuing along the south line of Circle K Mobile Home Park (Plat Book 14 Page 2, Slide 1207) and the south line of the Darlene and Lorenzo Watson property (Deed Book 753 Page 693), North 89 degrees 20 minutes 27 seconds East for a distance of 2549.32 feet to a #4 rebar found at the northeast corner of the herein described tract;

    THENCE along the west line of the Watson property, South 00 degrees 45 minutes 53 seconds West for a distance of 613.34 feet to a #4 rebar w/cap #3175 found at the southeast corner of the herein described tract and the northeast corner of Tract 3;

    THENCE along the north line of Tract 3, South 89 degrees 22 minutes 42 seconds West for a distance of 2564.72 feet to the point of beginning.

Together with and subject to covenants, easements, and restrictions of record.

This tract contains 35.944 acres according to a survey by VL Associates on August 17, 2010.

Being the same property conveyed from Patricia Balentine to Jimmy D. Geurin Jr. by deed dated December 28, 2010 and recorded December 16, 2010, of record in Deed Book 864 Page 341, in the Calloway County Court Clerk's Office.


PREPARED BY:

_____

JASON G. HOWELL
The Law Offices of Jason G. Howell, PLLC
300 Main Street
Murray, Kentucky  42071
(270) 753-2200


Doc/Farm Services Agency/Geurin, Jimmy D./Ex A

This form is available electronically.

Form Approved - OMB No. 0560-0238
(See Page 7 for Privacy Act and Public Burden Statements)

| FSA-2028 | U.S. DEPARTMENT OF AGRICULTURE | Position 1 |
|---|---|---|
| (12-31-07) | Farm Service Agency | |

## SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT,** dated *(a)*____**January 22, 2010**_____, is made between the United States of America, acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and *(b)*____
   **JIMMY DALE GEURIN JR**_____

(Debtor), whose mailing address is (c)_____
   **229 GEURIN RD, MURRAY, KY 42071-4822**_____

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial _____ Date _1-22-10_



**FSA-2028** (12-31-07)                                                                                              Page 2 of 7

(b) All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and Direction<br>from Named Town or Other<br>Description |
|---|---|---|---|
| Phylis Nowakowski | 165 | CALLOWAY, KY | |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial _____ Date 1-22-10

**FSA-2028** (12-31-07)                                                                                    Page 3 of 7

(c)  All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of (1) _____ :

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 4 | round bale rings | | metal,cowfdrs. | new | 2010 | |
| 2 | 1 | solar fence charger | | | | | |
| 3 | 3 | feed troughs | | 8 ft | new | 2010 | |
| 4 | 1 | mineral feeder | | | new | 2010 | |
| 5 | 1 | creep feeder | | 100 bu. | new | 2010 | |
| 6 | 1 | plastic water tank | | 200 gal. | new | 2010 | |
| 7 | 1 | round bale trailor | shop made | 6 round bale | new | 2010 | |
| 8 | 1 | gooseneck livestock trailor | | 6x 28 ft. | fair | | |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial _____   Date 1-22-10

**FSA-2028** (12-31-07)

(d)  All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)* _____ :

| (2) Line No. | (3) Quantity | (4) Kind or Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 2 | Cattle - Beef - Breeding Bulls | angus | black | | 4 | |
| 2 | 42 | Cattle - Beef - Breeding Cows | angus cross | black, white | | 4-6 y | |

Initial _____ Date _1-2 2-10_

(e)  All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title,
     payment intangibles, and general intangibles, including but not limited to the following:

ALL FEDERAL SUBSIDY ENTITLEMENTS IN WHATEVER FORM AND FROM WHATEVER
SOURCE DERIVED,INCLUDING BUT NOT LIMITED TO ALL FSA,CCC,DAIRY
TERMINATION,FCIC INSURANCE,PIK COMMODITY CERTIFICATES,AND SET OFF
PROCEEDS,AND TTPP PAYMENTS.

### 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a)  Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe
     livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral
     is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other
     interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and
     (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm
     operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b)  Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as
     stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan
     funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon
     from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)*
     insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured
     Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)*
     not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or
     permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon,
     injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock
     covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested
     information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c)  Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured
     by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and
     costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the
     collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or
     terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d)  Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements
     and to file continuation statements.

(e)  Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in
     Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may
     affect this security interest or its perfection; and any event of default.

(f)  Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due,
     including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for
     the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g)  All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by
     Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party
     shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any
     indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h)  In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further
     documents, including additional security instruments on such real and personal property as Secured Party may require and to
     take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to
     effectuate the rights granted to Secured Party herein.

Initial _____  Date _1-22-10_

FSA-2028 (12-31-07)                                                                                   Page 6 of 7

**4. IT IS FURTHER AGREED THAT:**

(a)  Until default, Debtor may retain possession of the collateral.

(b)  **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

  (1)  Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

  (2)  Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

  (3)  A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c)  Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d)  It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e)  Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f)  Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g)  This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h)  If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial _JB_        Date _1-22-10_

(i)   The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j)   If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan.

(k)   Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l)   **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

## 5.   CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. *Jimmy Dale Geurin Jr.*          1-22-10          6B. _____

JIMMY DALE GEURIN JR                    *(Date)*                    *Debtor*                                              *(Date)*

Space provided for additional signatures:

NOTE:   The following statements are made in accordance with the Privacy Act of 1974 (5 USC 552a): the Farm Service Agency (FSA) is authorized by the Consolidated Farm and Rural Development Act, as amended (7 USC 1921 et seq.), or other Acts, and the regulations promulgated thereunder, to solicit the information requested on its application forms. The information requested is necessary for FSA to determine eligibility for credit or other financial assistance, service your loan, and conduct statistical analyses. Supplied information may be furnished to other Department of Agriculture agencies, the Internal Revenue Service, the Department of Justice or other law enforcement agencies, the Department of Defense, the Department of Housing and Urban Development, the Department of Labor, the United States Postal Service, or other Federal, State, or local agencies as required or permitted by law. In addition, information may be referred to interested parties under the Freedom of Information Act, to financial consultants, advisors, lending institutions, packagers, agents, and private or commercial credit sources, to collection or servicing contractors, to credit reporting agencies, to private attorneys under contract with FSA or the Department of Justice, to business firms in the trade area that buy chattel or crops or sell them for commission, to Members of Congress or Congressional staff members, or to courts or adjudicative bodies. Disclosure of the information requested is voluntary. However, failure to disclose certain items of information requested, including your Social Security Number or Federal Tax Identification Number, may result in a delay in the processing of an application or its rejection.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382 (TDD). USDA is an equal opportunity provider and employer.

This form is available electronically.

Form Approved - OMB No. 0560-0238
(See Page 7 for Privacy Act and Public Burden Statements)

| FSA-2028 | U.S. DEPARTMENT OF AGRICULTURE | Position 1 |
| --- | --- | --- |
| (09-03-10) | Farm Service Agency | |

### SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT**, dated *(a)*___**December 28, 2010**_____ , is made between the United States of America, acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and *(b)*_____
  **JIMMY DALE GEURIN JR**_____

(Debtor), whose mailing address is *(c)*_____
  **229 GEURIN RD, MURRAY, KY 42071-4822**_____

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE**, in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial _____ Date 12-28-10



**FSA-2028** (09-03-10)

(b)  All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and Direction<br>from Named Town or Other<br>Description |
|---|---|---|---|
| 6324 | 37 | CALLOWAY, KY | |
| 6325 | 17 | CALLOWAY, KY | |
| Phylis Nowakowski | 165 | CALLOWAY, KY | |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial _JN_____   Date 17-28-10

FSA-2028 (09-03-10)                                                                                      Page 3 of 7

(c)  All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of (1) ___Kentucky___ ;

| (2)<br>Line No. | (3)<br>Quantity | (4)<br>Kind | (5)<br>Manufacturer | (6)<br>Size and Type | (7)<br>Condition | (8)<br>Year | (9)<br>Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 4 | Bale rings | | Round | Average | 2010 | |
| 2 | 1 | Solar fence charger | | Gallager | Average | | |
| 3 | 3 | Feed troughs | | 8 ft | Average | 2010 | |
| 4 | 1 | Mineral feeder | | NA | Average | 2010 | |
| 5 | 1 | Creep feeder | | 100 bu. | Average | 2010 | |
| 6 | 1 | Plastic water tank | | 200 gal. | Average | 2010 | |
| 7 | 1 | Tractor | John Deere | 2030 | Average | 1975 | 23097T |
| 8 | 1 | Four-wheeler | Yamaha | | Average | | |
| 9 | 1 | Loader | John Deere | 540 | Average | 2002 | |
| 10 | 3 | Bale Feeders | | | Excellent | 2010 | |
| 11 | 3 | Feeder Bunks | | 10 Foot | Excellent | 2010 | |
| 12 | 1 | Calf Creep Feeder | | 750 lb | Excellent | 2010 | |
| 13 | 1 | Mineral Feeder | | | Excellent | 2010 | |
| 14 | 2 | Water Troughs | | Oval 110 gallon | Excellent | 2010 | |
| 15 | 1 | Post Driver | | | Excellent | 2010 | |
| 16 | 1 | Fence Stretcher | | Woven Wire | Excellent | 2010 | |
| 17 | 1 | Fence Stretcher | | Barb Wire | Excellent | 2010 | |
| 18 | 1 | Front end loader bale spear | John Deere | AB13E | Excellent | 2010 | |
| 19 | 1 | Squeeze Chute | | CNL | Excellent | 2010 | |
| 20 | 1 | Chute Trailer | | CNL | Excellent | 2010 | |
| 21 | 1 | Trailer | shop made | 6 Round Bales | Average | 2010 | |
| 22 | 1 | Livestock trailer | | 6x 28 ft. Gooseneck | Average | | |
| 23 | 1 | Farm Truck | Chevrolet | 1 2 Ton 4x4 | Average | 1990 | |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

All fencing, gates, & corrals.

Initial _____   Date 12-28-10

**FSA-2028** (09-03-10)

(d)   All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*   __Kentucky__ :

| (2) Line No. | (3) Quantity | (4) Kind or Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 2 | Cattle - Beef - Breeding Bulls | Angus | Black | | 4 Yrs | |
| 2 | 42 | Cattle - Beef - Breeding Cows | Angus Cross | Black White | | 4-6 Y | |
| 3 | 1 | Cattle - Beef - Breeding Bulls | Angus Cross | Black White | | | |
| 4 | 30 | Cattle - Beef - Breeding Cows | Angus Cross | Black White | | | |

Initial _____   Date _12-28-10_

**FSA-2028** (09-03-10)

(e)   All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

ALL FEDERAL SUBSIDY ENTITLEMENTS IN WHATEVER FORM AND FROM WHATEVER SOURCE DERIVED, INCLUDING BUT NOT LIMITED TO ALL FSA, CCC, DAIRY TERMINATION, FCIC INSURANCE, PIK COMMODITY CERTIFICATES, AND SET OFF PROCEEDS, AND TTPP PAYMENTS.

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a)   Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except (1) any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; (2) any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b)   Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will (1) use the loan funds for the purposes for which they were or are advanced; (2) comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; (3) care for and maintain collateral in a good and husbandlike manner; (4) insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; (5) permit Secured Party to inspect the collateral at any reasonable time; (6) not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; (7) not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and (8) maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c)   Debtor will pay promptly when due all (1) indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; (2) rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; (3) filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and (4) fees and other charges now or later required by regulations of the Secured Party.

(d)   Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e)   Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f)   Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g)   All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h)   In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial _____   Date 7-28-10

FSA-2028 (09-03-10)

4. IT IS FURTHER AGREED THAT:

(a)  Until default, Debtor may retain possession of the collateral.

(b)  **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

   (1)  Secured Party, at its option, with or without notice as permitted by law may (a) declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; (b) enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and (c) exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

   (2)  Debtor (a) agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and (b) waives all notices, exemptions, compulsory disposition and redemption rights;

   (3)  A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c)  Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d)  It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e)  Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f)  Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g)  This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h)  If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial _____  Date 12-78-10

(i)  The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j)  If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k)  Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l)  **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

## 5.  CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. _____          6B. *(Date)* 12-28-10

JIMMY DALE GEURIN JR

_____                     *(Date)* _____

Debtor

---

NOTE:   *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees.  The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0238.  The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).

To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

*Position 1*

**Form RD 440-15**
(Rev. 7-98)

UNITED STATES DEPARTMENT OF AGRICULTURE
Rural Development
Farm Service Agency

## SECURITY AGREEMENT
## (DIRECT LOANS TO INDIVIDUALS)

    I.    **THIS SECURITY AGREEMENT** is made between the United States of America acting through the United States Department of Agriculture (USDA) (called Secured Party) and JIMMY DALE GEURIN, JR.

and NA                                        (called Debtor), whose mailing address

is 229 GEURIN RD., MURRAY, KY 42071

    II.    **BECAUSE,** Debtor is justly indebted to Secured Party as evidenced by a certain promissory note, called the note, dated

December 28            , 2010     , for the principal sum of ONE HUNDRED NINTY-SIX THOUSAND

SIX HUNDRED EIGHTY AND NO/100 --------------------      dollars ($ 196,680.00      ),

with interest at the rate of FOUR AND ONE-EIGHTH      percent ( 4.13      %) per annum, executed by Debtor

and payable to the order of Secured Party; and

    The note evidences a loan to Debtor in the principal amount specified in the note, and Secured Party, at any time, may assign the note and insure the payment of it pursuant to the Consolidated Farm and Rural Development Act, or any other act administered by the USDA; and

    It is the purpose and intent of this instrument that, among other things, at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument, this instrument shall secure payment of the note; and

    **NOW, THEREFORE,** in consideration of the loan and (a) at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument to secure prompt payment of the note and any renewals and extensions of it and any agreements contained in it, and (b) to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this instrument, and the performance of every covenant and agreement of Debtor contained in this instrument or in any supplementary agreement:

    **DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following collateral, including the proceeds of this collateral:

Initial _JDG_ Date 12-28-10



RD 440-15 (Rev. 7-98)

*Item 1.* The following-described livestock, including all replacements of or substitutions for such livestock:

| Quantity | Kind-Sex | Breed | Color | Weight or Average Weight | Age or Age Range | Brands or Other Identification |
|---|---|---|---|---|---|---|
| 2 | Breeding Bulls | Angus | Black | | 4 yrs | |
| 42 | Breeding Cows | Angus Cross | Black White | | 4-6 yrs | |
| 1 | Breeding Bull | Angus Cross | Black White | | | |
| 30 | Breeding Cows | Angus Cross | Black White | | | |

*Item 2.* The following-described equipment, including all replacements of or substitutions for such equipment:

| Quantity | Kind | Manufacturer | Size and Type | Condition | Year Manufac- ture | Serial or Motor No. |
|---|---|---|---|---|---|---|
| | SEE EXHIBIT A ATTACHED | | | | | |

Initial _____  Date 1-28-10

Any fixtures described above is affixed or is to be affixed to the real estate described as follows:

| Farm or Other Real Estate Owner | Approximate No. of Acres | County and State | Approximate Distance and Direction from a Named Town |
|---|---|---|---|
| Jimmy Dale Geurin Jr | 53.4 | Calloway, KY | Approx 8 mi from Murray, KY |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

*Item 3.* All farm and other equipment which may be purchased after this instrument is signed by Debtor with the proceeds of the loan described in this instrument.

### III.   DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

A.   Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interest except ( 1 ) any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect, and (2) other liens, encumbrances, security or other interests, as follows:

and Debtor will defend the collateral against the claims and demands of all other persons. Reference to the above liens, encumbrances, security and other interests is for warranty purposes only and does not indicate their priority.

B.   Statements contained in Debtor's loan application are true and correct; and Debtor will (1) use the loan funds for the purposes for which they were or are advanced, (2) comply with such farm and home management plans as may be agreed upon from time to time by Debtor and Secured Party, (3) care for and maintain the collateral in a good and husbandlike manner, (4) insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance, (5) permit Secured Party to inspect the collateral at any reasonable time, (6) not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party, and (7) not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired.

C.   Debtor will pay promptly when due all (1) indebtedness evidenced by the note and any indebtedness to Secured Party secured by this instrument, (2) rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances; and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest, (3) filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest, and (4) fees for and other charges now or late required by regulations of the USDA.

D.   Any amount due and unpaid under the terms of the note, may be credited by Secured Party on the note and thereupon shall constitute an advance by Secured Party for the account of Debtor. Any advance by Secured Party as described in this paragraph shall bear interest at the note rate from the date on which the amount of the advance was due to the date of payment to Secured Party, provided that Borrower shall be required to pay interest on only the principal portion of such advance unless otherwise provided in the regulations of the USDA.

E.   Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the note rate until paid to Secured Party.

Initial _____   Date 12-28-10

F.  All advances by Secured Party as described in this instrument, with interest, shall be immediately due and payable by Debtor to Secured Party without demand at the place designated in the note and shall be secured by this instrument. No such advance by Secured Party shall relieve Debtor from breach of his covenant to pay. Any payment made by Debtor may be applied on the note or any indebtedness to Secured Party secured by this instrument, in any order Secured Party determines.

G.  In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor will execute and deliver to Secured Party at any time, upon demand, such additional security instruments on such real and personal property as Secured Party may require.

## IV. IT IS FURTHER AGREED THAT:

A.  Until default Debtor may retain possession of the collateral.

B.  Default shall exist hereunder if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness hereby secured or to observe or perform any covenants or agreements herein or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of anyone of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further prohibited by 7 CFR Part 1940, Subpart G. Upon any such default:

1.  Secured Party, at its option, with or without notice as permitted by law, may (a) declare the unpaid balance on the note and any indebtedness secured by this instrument immediately due and payable, (b) enter upon the premises and take possession of, repair, improve, use, and operate the collateral or make equipment unusable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and (c) exercise any sale or other rights accorded by law.

2.  Debtor (a) agrees to assemble the collateral and make it available to Secured Party at such time and place as designated by Secured Party, and (b) waives all notices, exemptions, compulsory disposition and redemption rights.

3.  A default shall exist under any other security instrument held or insured by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under any such other security instrument shall constitute default under this instrument.

C.  Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, selling and the like and for payment of reasonable attorney's fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law, and in accordance with current regulations of the USDA, third to the satisfaction of indebtedness secured by this instrument, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any other obligations of Debtor owing to or insured by Secured Party, and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to or insured by Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policy. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

D.  It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this instrument, no collateral covered by this instrument is or shall become realty or accessioned to other goods.

E.  This instrument is subject to the present regulations of the Secured Party, and to its future regulations not inconsistent with the express provisions of this instrument.

F.  If any provision of this instrument is held invalid or unenforceable, it shall not affect any other provisions, but this instrument shall be construed as if it had never contained such invalid or unenforceable provision.

G.  The rights and privileges of Secured Party under this instrument shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this instrument are joint and several and shall bind personal representatives, heirs, successors, and assigns.

Initial /D/D  Date 12-78-10

H.   If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from the Farm Credit System, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured by this instrument and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

I.   Secured Party shall have the sole and exclusive rights as the secured party under this instrument, including but not limited to the power to grant or issue any consent, release, subordination, continuation statement or termination statement, and no insured lender shall have any right, title, or interest in or to the security interest created by this instrument or any benefits of it.

J.   **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

K.   Failure by the Secured Party to exercise any right-whether once or often-shall not be construed as a wavier of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

_____(SEAL)
                                        *(Debtor)*

12-28-10
*(Date)*                 _____(SEAL)
                                        *(Debtor)*

Form RD-440-15, Page 5 of 5

FSA-2028 (09-03-10)   **Exhibit A**                                Page 3 of 7

(c)  All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)* ___Kentucky___ :

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 4 | Bale rings | | Round | Average | 2010 | |
| 2 | 1 | Solar fence charger | | Gallager | Average | | |
| 3 | 3 | Feed troughs | | 8 ft | Average | 2010 | |
| 4 | 1 | Mineral feeder | | NA | Average | 2010 | |
| 5 | 1 | Creep feeder | | 100 bu. | Average | 2010 | |
| 6 | 1 | Plastic water tank | | 200 gal. | Average | 2010 | |
| 7 | 1 | Tractor | John Deere | 2030 | Average | 1975 | 23097T |
| 8 | 1 | Four-wheeler | Yamaha | | Average | | |
| 9 | 1 | Loader | John Deere | 540 | Average | 2002 | |
| 10 | 3 | Bale Feeders | | | Excellent | 2010 | |
| 11 | 3 | Feeder Bunks | | 10 Foot | Excellent | 2010 | |
| 12 | 1 | Calf Creep Feeder | | 750 lb | Excellent | 2010 | |
| 13 | 1 | Mineral Feeder | | | Excellent | 2010 | |
| 14 | 2 | Water Troughs | | Oval 110 gallon | Excellent | 2010 | |
| 15 | 1 | Post Driver | | | Excellent | 2010 | |
| 16 | 1 | Fence Stretcher | | Woven Wire | Excellent | 2010 | |
| 17 | 1 | Fence Stretcher | | Barb Wire | Excellent | 2010 | |
| 18 | 1 | Front end loader bale spear | John Deere | AB13E | Excellent | 2010 | |
| 19 | 1 | Squeeze Chute | | CNL | Excellent | 2010 | |
| 20 | 1 | Chute Trailer | | CNL | Excellent | 2010 | |
| 21 | 1 | Trailer | shop made | 6 Round Bales | Average | 2010 | |
| 22 | 1 | Livestock trailer | | 6x 28 ft. Gooseneck | Average | | |
| 23 | 1 | Farm Truck | Chevrolet | 1/2 Ton 4x4 | Average | 1990 | |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

All fencing, gates, & corrals.

Initial: _____ Date 12-78-16

## Revised Article 9 UCC Search

## UCC Search Results

| File amendment to this UCC | Return to search form |
|---|---|

**File number:** 2010-2430760-55
**Filing date:** 1/8/2010 11:45:03 AM
**Lapse date:** 1/8/2020 11:45:03 AM
**Status:** A - Active

## ACTIONS

| Action | File Date | Status |
|---|---|---|
| Continuation | 1/7/2015 8:40:08 AM | Active - Filed online Sec party of record - United States of America, USDA, acting through Farm Service Agency |
| Initial financing Statement | 1/8/2010 11:45:03 AM | Active - Filed online |

## NAMES

| Debtor/Secured Party/Filer | Date Added | Address |
|---|---|---|
| Debtor JIMMY DALE GEURINJR | 1/8/2010 11:45:03 AM | 229 GEURIN RD MURRAY KY 42071 |
| Secured Party USDA FARM SERVICE AGENCY | 1/8/2010 11:45:03 AM | 1000 COMMONWEALTH DR MAYFIELD KY 42066 |
| Filer MARY JANE HOWELL | 1/8/2010 11:45:03 AM | 1000 COMMONWEALTH DR MAYFIELD KY 42066 |
| Filer United States of America, USDA, acting through Farm Service Agency | 1/7/2015 8:40:08 AM | 3237 Eagle Way Bypass Hopkinsville KY 42240 |

## COLLATERAL DESCRIPTION

| Date Filed | Collateral Description |
|---|---|
| 1/8/2010 11:45:03 AM | LIVESTOCK AND EQUIPMENT |

## IMAGES

| Document Type | PDF | Tiff Image File Date | Pages |
|---|---|---|---|
| UCC Filing - Continuation | PDF | 1/7/2015 8:40:08 AM | 1 |



## UCC FINANCING STATEMENT AMENDMENT

Name and address of filer:

United States of America, USDA, acting through
Farm Service Agency
3237 Eagle Way Bypass
Hopkinsville, KY 42240

**2010-2430760-55.02**
Kentucky Secretary of State
File Date    1/7/2015 8:40:08 AM
Status    Active
Fee    $5.00

This document is a representation of a
filing made electronically at the
Kentucky Secretary of State's web site

| INITIAL FINANCING STATEMENT FILE # | |
|---|---|
| | 2010-2430760-55 |

| Type of Amendment | |
|---|---|
| | Continuation |

NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT

a. ORGANIZATION'S NAME
United States of America, USDA, acting through Farm Service Agency

| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

## Revised Article 9 UCC Search

## UCC Search Results

| File amendment to this UCC | Return to search form |
| --- | --- |

**File number:** 2010-2492995-83
**Filing date:** 12/22/2010 10:53:25 AM
**Lapse date:** 12/22/2020 10:53:25 AM
**Status:** A - Active

## ACTIONS

| Action | File Date | Status |
| --- | --- | --- |
| Continuation | 12/21/2015 3:38:40 PM | Active - Filed online Sec party of record - USDA/Farm Service Agency |
| Initial financing Statement | 12/22/2010 10:53:25 AM | Active - Filed online |

## NAMES

| Debtor/Secured Party/Filer | Date Added | Address |
| --- | --- | --- |
| Debtor<br>Jimmy Dale Geurin | 12/22/2010 10:53:25 AM | 229 Geurin Road<br>Murray KY 42071 |
| Secured Party<br>United States of America acting through Farm Service Agency | 12/22/2010 10:53:25 AM | 3237 Eagle Way Bypass<br>Hopkinsville KY 42240 |
| Filer<br>Farm Service Agency | 12/22/2010 10:53:25 AM | 3237 Eagle Way Bypass<br>Hopkinsville KY 42240 |
| Filer<br>USDA/Farm Service Agency | 12/21/2015 3:38:40 PM | 3237 Eagle Way Bypass<br>Hopkinsville Ky 42240 |

## COLLATERAL DESCRIPTION

| Date Filed | Collateral Description |
| --- | --- |
| 12/22/2010 10:53:25 AM | All farm and other equipment and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions and acce3ssions thereto, including inventory, accounts and contract rights, general intangibles and proceeds and products thereof, including all Federal or state subsidies and entitlements in whatever form and from whatever source derived.<br>All livestock produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements and additions thereto, including inventory, accounts and contract rights, general intangibles and proceeds and products thereof, including all Federal or state subsidies and entitlements in whatever form and from whatever source derived.<br>All crops for crop year 2011, including inventory, accounts and contract rights, general intangibles and proceeds and products thereof, |



including all Federal or state subsidies and entitlements in whatever form and from whatever source derived.

## IMAGES

| Document Type | PDF | Tiff Image | File Date | Pages |
|---|---|---|---|---|
| UCC Filing - Continuation | PDF | | 12/21/2015 3:38:40 PM | 1 |
| UCC Filing - Initial financing Statement | PDF | | 12/22/2010 10:53:25 AM | 1 |

**UCC FINANCING STATEMENT**

| 2010-2492995-83.01 |
|---|
| **Kentucky Secretary of State** |
| File Date   12/22/2010 10:53:25 AM |
| Status   Active |
| Fee   $5.00 |

Name and address of filer:

**Farm Service Agency**
**3237 Eagle Way Bypass**
**Hopkinsville, KY 42240**

This document is a representation of a filing made electronically at the Kentucky Secretary of State's web site

**DEBTOR'S EXACT FULL LEGAL NAME**

a. ORGANIZATION'S NAME

| b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Geurin | Jimmy | Dale | |

| c. MAILING ADDRESS | CITY | | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 229 Geurin Road | Murray | KY | 42071 | USA |

| e. TYPE OF ORGANIZATION | f. JURISDICTION OF ORGANIZATION | g. ORGANIZATIONAL ID #, if any |
|---|---|---|
| | | NONE |

**SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)**

a. ORGANIZATION'S NAME

**United States of America acting through Farm Service Agency**

| b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| c. MAILING ADDRESS | CITY | | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3237 Eagle Way Bypass | Hopkinsville | KY | 42240 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All farm and other equipment and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions and acce3ssions thereto, including inventory, accounts and contract rights, general intangibles and proceeds and products thereof, including all Federal or state subsidies and entitlements in whatever form and from whatever source derived.

All livestock produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements and additions thereto, including inventory, accounts and contract rights, general intangibles and proceeds and products thereof, including all Federal or state subsidies and entitlements in whatever form and from whatever source derived.

All crops for crop year 2011, including inventory, accounts and contract rights, general intangibles and proceeds and products thereof, including all Federal or state subsidies and entitlements in whatever form and from whatever source derived.

## UCC FINANCING STATEMENT AMENDMENT

Name and address of filer:

USDA/Farm Service Agency

3237 Eagle Way Bypass

Hopkinsville, Ky 42240

**2010-2492995-83.02**
Kentucky Secretary of State
File Date     12/21/2015 3:38:40 PM
Status        Active
Fee           $5.00

This document is a representation of a filing made electronically at the Kentucky Secretary of State's web site

| INITIAL FINANCING STATEMENT FILE # | |
|---|---|
| | 2010-2492995-83 |

| Type of Amendment | |
|---|---|
| | Continuation |

NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| USDA/Farm Service Agency | | | |
| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA | JIMMY DALE GEURIN, JR., ET AL. |

| (b)  County of Residence of First Listed Plaintiff _____ | County of Residence of First Listed Defendant  CALLOWAY |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE |
| | LAND INVOLVED. |

| (c)  Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |
|---|---|

## II. BASIS OF JURISDICTION     (Place an "X" in One Box Only)

☒ 1  U.S. Government
     Plaintiff

☐ 2  U.S. Government
     Defendant

☐ 3  Federal Question
     (U.S. Government Not a Party)

☐ 4  Diversity
     (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☒ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN     (Place an "X" in One Box Only)

☒ 1  Original
     Proceeding

☐ 2  Removed from
     State Court

☐ 3  Remanded from
     Appellate Court

☐ 4  Reinstated or
     Reopened

☐ 5  Transferred from
     another district
     (specify)

☐ 6  Multidistrict
     Litigation

☐ 7  Appeal to District
     Judge from
     Magistrate
     Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. SECTION 1345

Brief description of cause:
RURAL HOUSING SERVICE (RHS) f/k/a FARMERS HOME ADMINISTRATION (FmHA) FEDERAL FORECLOSURE

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

DEMAND $
$361,598.97

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____

DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 4/30/2018 | s/ William F. Campbell |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# United States District Court

<u>**WESTERN**</u>          **DISTRICT OF**          <u>**KENTUCKY**</u>
**AT PADUCAH**

United States of America                    **SUMMONS IN A CIVIL CASE**

CASE NUMBER:

    **v.**

Jimmy Dale Geurin, et al.

**TO:**    (Name & Address of Defendant)

      Jimmy Dale Geurin
      2249 Irvin Cobb Road
      Murray, KY 42071

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name & address)

      William F. Campbell
      Assistant U.S. Attorney
      United States Attorney's Office
      717 West Broadway
      Louisville, KY  40202

an answer to the complaint which is herewith served upon you, within <u>  twenty-one (21)  </u> days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____          _____
**CLERK**                                                                                    DATE


_____
**(BY) DEPUTY CLERK**

# RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and Complaint was made by me[1] | Date |
| Name of Server (Print) | Title |

**Check one box below to indicate method of service**

☐    Served personally upon the defendant.  Place where served:

_____

☐    Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and

discretion then residing therein.  Name of person with whom the summons and complaint were left:

_____
_____

☐    Returned unexecuted:

_____
_____
_____

☐    Other (specify):

_____
_____
_____

## STATEMENT OF SERVICE FEES

| Travel  N/A | Services | Total |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service of Service Fees is true and correct.

Executed on    _____    _____
                          Date                                   Signature of Server

_____

[1]    **As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure**